**UNIVERSITY OF TEXAS, Appellant,**

v.

**Beverly Patrick GAINES et al., Appellees.**

**No. 10989.**

Court of Civil Appeals of Texas.

Austin.

July 18, 1962.

Rehearing Denied Aug. 20, 1962.

F. L. Kuykendall, Charles G. Trenck-
mann, Austin, for appellees.

HUGHES, Justice.

Beverly Patrick Gaines, John R. Gaines, Jr., Clair Gaines and Thomas Buffington Gaines, grandchildren of John Quincy Gaines and wife Hattie E. Gaines, brought this suit to establish their rights and to recover certain described property claimed under the will of John Quincy Gaines who died in Travis County January 6, 1956. His will, duly probated, was executed August 28, 1953. The Austin National Bank was sued in its fiduciary capacity only as independent executor and trustee under the will of Hattie E. Gaines who died in Travis County February 20, 1958. Her will, duly probated, was dated March 22, 1957. The University of Texas intervened claiming certain rights in the properties sued for as beneficiary under the will of Hattie E. Gaines.

All of the property in controversy was, at the death of John Quincy Gaines, the community property of John Quincy and Hattie E. Gaines. It was stipulated that such property was on hand and subject to the judgment sought.

Essentially, this suit requires the construction of the will of John Quincy Gaines. We quote the pertinent provisions of his will:

"II. I give, devise and bequeath to my beloved wife, Hattie E. Gaines, all of my property, real, personal or mixed, wheresoever the same may be situated. and whether the same be my separate property or my interest in the community property of myself and my wife, Hattie E. Gaines. My wife shall have full title to all of my property with right to sell, mortgage, or otherwise dispose of all or any part thereof.

"III. In case my wife, Hattie E. Gaines, predeceases me, or if my wife executes an instrument requesting the

Will Wilson, Atty. Gen., Ben M. Harrison, Milton Richardson, Asst. Attys. Gen., Austin, for appellant.

Austin National Bank of Austin, Texas, to manage and control said property, thereby relinquishing her right to do so, or if my said wife survives me, but for any reason she is unable at my death or later becomes unable to attend to the business of managing and controling the property herein given, devised, and bequeathed to her, I direct and give, devise and bequeath all of my estate then in existence unto my trustee, hereinafter named, first, for the benefit of my wife during her life, and upon her death, for the benefit of my son, John R. Gaines, and upon his death, for the benefit of my grandchildren, hereinafter named, to have and to hold the same upon the trust hereinafter set forth. I hereby authorize and empower my trustee to sell, collect, compromise, convert into money, or to do all or any other act, the same as if it were the property of said trustee, as to all or any part of my property, and to invest and re-invest the proceeds in other property, real, or personal, and to make such sales, collections, and execute deeds, transfers, releases, mortgages, and any other such instruments as are in the opinion of my trustee necessary to make and to execute. I empower my trustee, and it is hereby authorized and empowered to sell for cash or on credit, at public or private sale, all or any portion of the property of which I shall die possessed, and which may be in existence at the time that said trust comes into effect, and to lease and manage on such terms and for such time as it shall believe to the best interest of said trust fund.

"IV. In case my said wife, Hattie E. Gaines, predeceases me, or after the death of my beloved wife, I direct my trustee to hold the trust fund, as well as any and all other property of my estate then in existence, for the use and benefit of my son, John R. Gaines, for and during the natural life of my said son, and then at the death of my said son, my trustee shall hold said trust fund, as well as all property of my estate then in existence for the use and benefit of my grandchildren, John R. Gaines, Jr., Beverly Patrick Gaines, Clair Gaines, and Thomas Buffington Gaines, until the youngest of said grandchildren, being Thomas Buffington Gaines, shall have reached thirty-five years of age, and at that time, my said trustee shall turn over to said grandchildren, in equal shares, share and share alike, all of said trust fund and property then in existence which is any part of my estate. In case any of my said grandchildren shall die before reaching thirty-five years of age, such grandchild's portion shall vest in and be transferred to such person or persons and in such proportions as such grandchild shall by will appoint; or if such grandchild shall die intestate, then the same shall vest in and be transferred to such grandchild's heirs at law according to the statutes of descent and distribution of the State of Texas, but said share of said grandchild shall be held in trust by my said trustee for the benefit of such beneficiaries until the death of all of said grandchildren, or until the youngest of said surviving grandchildren shall reach thirty-five years of age, whichever occurs first; whereupon the entire principal and undistributed income of said trust shall be delivered to and become the absolute property of those entitled thereto.

"V. I further direct and provide that during the lifetime of my son, John R. Gaines, that said trustee shall pay to my said son the monthly net income from said property and trust, after withholding proper amounts for repairs, taxes, insurance, and any and all other expense including expense of administering this trust, and that no portion of the principal shall be distributed to my said son. If said trust should come into existence during the lifetime of my wife, I direct and em-

power said trustee to not only distribute each month the net income from said trust for the use and benefit of my said wife, but also, if, in the discretion of said trustee, it is necessary in order to properly care for my said wife and for her to live at a standard commensurate with her station in life, for all or any portion of the principal of said trust and of my estate shall and may be used for the support and maintenance of my said wife.

\* \* \* \* \* \*

"VIII. If any beneficiary under this will shall contest the validity or object to the probate of this will, or attempt to vacate the same or to alter or change any of the provisions hereof, such person or persons shall thereby be deprived of all beneficial interest hereunder and such person or persons shall be excluded from taking any part of said trust, including the income or property included therein and the same shall be divided equally among the other persons enumerated herein." [1]

On June 19, 1956, Hattie E. Gaines executed and acknowledged an instrument in favor of the Austin National Bank by which she conveyed certain real property belonging to the community estate of herself and John Quincy Gaines to the Bank in trust for herself and, upon her death, directing payment of certain sums to persons not parties to this suit. The Bank accepted, in writing, the trust imposed upon it.

We need not quote extensively from this trust agreement, only enough to demonstrate that it was drawn and executed in conformity to the conditions set out in the will of John Quincy Gaines pertaining to such an instrument.

"1. The said Trustee is hereby given full, complete and uncontrolled right, power and authority to sell, ex-

change, mortgage, invest or reinvest any of the property hereinabove described and which is hereby being conveyed to the Trustee, as well as any additional property which the Grantor herein may later convey to the Trustee and make a part of this trust. In this connection, it is stated that it is contemplated that it may be necessary in the discretion of the Trustee to sell all or any part of said property, and use principal as well as income, increase or profit therefrom for the support and maintenance of the Grantor, Hattie E. Gaines, and such authority is hereby expressly given to the Trustee. It is further contemplated that said property may be rented or mortgaged, and said Trustee is expressly given authority to rent the same or to place liens and mortgages against all or any part thereof and to use the proceeds therefrom for the support and maintenance of the Grantor, Hattie E. Gaines.

\* \* \* \* \* \*

"3. All property in this trust, including the principal, income, or increase therefrom, shall be administered by the Trustee during the lifetime of the Grantor, Hattie E. Gaines, for the support and maintenance of the said Hattie E. Gaines, and the Trustee shall expend from said income and corpus of said trust estate such sums and amounts as in its sole discretion shall be necessary or desirable for the maintenance and support of Hattie E. Gaines, including but not limited to all necessary medical care and hospitalization, if any, it being the intention of the Grantor that her reasonable needs and comforts shall be provided for during her lifetime so long as any portions of said trust estate exists. \* \* \*

"4. In addition to the power and authority concerning the property, busi-

---

1. It was stipulated that John R. Gaines had contested the will of his father and had, thereby, and by the filing of a dis-

claimer herein, forfeited his interest under such will.

ness, and financial matters hereinabove given and granted unto the said Trustee, said Trustee is further hereby given full power and authority over the person of the Grantor, Hattie E. Gaines, so that said Trustee will be the Guardian of the person of Hattie E. Gaines, as well as the Trustee of the Estate of the said Hattie E. Gaines.

\* \* \* \* \* \*

"9. This trust may be revoked only by written revocation executed personally by the Grantor, Hattie E. Gaines, and delivered to the Austin National Bank, Trustee, and filed in the County Clerk's Office of Travis County, Texas. It is agreed though that any revocation of the trust shall not be effective until six months after the written revocation notice has been given. The fact that this trust is revocable shall not in any way diminish the rights and powers given to the Trustee, but all actions of the Trustee which occur up to the actual date of termination of said trust shall be binding upon the Grantor herein, the same as if the said trust was irrevocable."

Upon the same day that Hattie E. Gaines executed the above trust agreement, June 19, 1956, she was admitted to Seton Hospital in Austin where she remained as a patient until discharged, August 22, 1956.

The Trial Court rendered judgment for appellees in the course of which it found "that under the provisions of the will of John Quincy Gaines, deceased, a trust estate came into existence as to the property that had not been disposed of by Hattie E. Gaines on June 19, 1956, on which date she executed an inter vivos trust requesting the Austin National Bank of Austin, Texas, to manage and control said property thereby relinquishing her right to do so. Also, the Court finds that the trust estate came into existence covering the property that had not been disposed of at the time of the death of Hattie E. Gaines on February 20, 1958, as provided for under Para-

graph IV of the will of John Quincy Gaines. The Court further finds that the properties and assets hereinafter awarded plaintiffs had not been disposed of either at the time of the inter vivos trust as aforesaid or at the time of death of Hattie E. Gaines." We affirm this judgment.

Appellant argues that the will of John Quincy Gaines, properly construed, contemplates the occurrence of the conditions stated in paragraph III of his will before his death in order to become effective. These conditions, or events, referred to in paragraph III of the will are (1) death of Hattie E. Gaines (2) execution by Hattie E. Gaines of an instrument requesting the Austin National Bank to manage and control the community estate (3) the incapacity of Hattie E. Gaines.

We quote appellant's argument for this construction of the will:

"That this should be and is the proper construction to place on Paragraph III is evidenced further by the fact that after setting forth the above mentioned contingencies, John Quincy Gaines then directs, gives, and devises and bequeaths 'all of my estate then in existence unto my trustee, hereinafter named.' John Quincy Gaines would have no estate in existence to bequeath to anyone after he had made an absolute devise of all of his property to his wife as he did in Paragraph II of his will, then died subsequent to the execution of the will and one of the events or contingencies mentioned above occurred after an interval of time had elapsed between his death and the occurrence of the event or contingency."

We dispose of these contentions upon general, but applicable, principles of law. A will is not a will, and no rights are conferred by it until the death of its maker. The death of John Quincy Gaines was essential to the vesting of any rights under his will in Hattie E. Gaines. During the lifetime of Mr. Gaines, the management and control of the community estate was in his

hands. A request by Mrs. Gaines to the Austin National Bank to manage and control the community estate of Mr. and Mrs. Gaines before his death would have been premature and futile.

The will of Mr. Gaines very plainly provided for the disposition of his estate in the event his wife predeceased him. Only in the event she survived her husband, did Mrs. Gaines or her described inability have any control or effect upon the course of descent of the property received under the will of her husband. We conclude discussion of this phase of appellant's argument by noting that there is no evidence that Mrs. Gaines was aware of the contents of her husband's will before his death. It would be a strange holding to impute to Mr. Gaines an intention to bind his wife as to the nature of her rights under the will by her voluntary action made without knowledge of resulting consequences.

■ Appellant cites and strongly relies upon the following statement of law taken from Gilliam v. Mahon, 231 S.W. 712, Tex. Comm. of App.:

" 'Where the first clause of a will in clear, unambiguous language gives and bequeaths to one devisee all the property real and personal of which the testator dies possessed, such estate so given cannot be disturbed, cut down, or diminished by a subsequent clause, which is uncertain and ambiguous in its meaning.' "

We do not consider this rule applicable because, in our opinion, the remaining portions of the will inconsistent with the outright bequest and devise made in paragraph II of the will are not uncertain or ambiguous in meaning.

Appellant points to this language in paragraph III of the will as being ambiguous " * * * In case my wife, Hattie E. Gaines * * * is unable at my death or later becomes unable to attend to the business of managing and controlling the property herein given, devised, and bequeathed to her * * * " in which event such property is to be held in trust for her, her son, and the grandchildren, appellant saying "there would then be no John Quincy Gaines' estate in existence to bequeath or devise * * * The subject of any proposed trust would be uncertain or non-existent."

■ This argument begs the question. Of course, if paragraph II is to be read and the reader is to stop, then appellant would be correct. We prefer to be guided by the time-honored and sound rule of construction that a will should be construed by considering all its provisions in order to reach a correct determination of the testator's intentions. McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412.

■ Appellant also contends that an ambiguity in the will is created by paragraph IV of the will, appellant saying:

"Paragraph IV of the John Quincy Gaines' will certainly does not place a limitation over or condition upon any property Hattie E. Gaines received under Paragraph II of the John Quincy Gaines' will that she had not disposed of at the time of her death. The testator by this paragraph authorized a trustee to hold a trust fund which was to be already in existence at the time of Hattie E. Gaines' death should she succeed John Quincy Gaines.

"A reading of Paragraph IV demonstrates that this paragraph was not intended to be effective unless the testamentary trust had been in existence. It says at the death of Hattie E. Gaines 'I direct my trustee to hold the trust fund as well as any and all other property of my estate then in existence for the use and benefit' of the persons there named. The words 'trust fund' do not include realty. They refer to personalty or, more specifically, money or deposits. The trustee was directed to hold the trust fund as well as all other property of the estate then in existence.

There could be no trust fund unless the trust existed. Clearly, Paragraph IV was not intended to limit the fee simple grant set forth in Paragraph II."

It is our opinion that paragraph IV of the will merely repeated but made more specific the terms of the trust which might be brought into existence under the provisions of paragraph III of the will. This paragraph provides that the testator's estate in existence upon creation of the trust should be held "for the benefit of my grandchildren, hereinafter named, to have and to hold the same upon the trust hereinafter set forth." Paragraph IV names the grandchildren and specifies in detail how and when the trust property shall be held, managed and distributed.

In our opinion, paragraph IV clarifies, rather than confuses the meaning of the will and the intent of the testator.

It is our purpose, and only our purpose, in reading this will from cover to cover to ascertain and carry into effect the intention of John Quincy Gaines. We believe that Mr. Gaines clearly expressed solicitude and love for and a desire to protect and benefit his wife, his son and his grandchildren, and in that order. Great leeway was given his wife in keeping or relinquishing the property received by her under his will. We must assume that she exercised an intelligent and understanding choice when she chose to appoint the Austin National Bank as trustee in conformity with the will of her husband and that she well knew the ultimate effect of her choosing.

Appellant makes the additional point that assuming that the Court has properly construed the will as herein indicated, Hattie E. Gaines did not relinquish to the Austin National Bank her right to control and manage the estate of her husband in conformity with the provisions of his will because the trust instrument executed by her reserved the right of revocation.

This contention is fully answered by the fact that no revocation was made or at-tempted to be made by Mrs. Gaines. She relinquished actual control of her husband's estate to the Austin National Bank from the date of such relinquishing instrument until her death. This was total and complete relinquishment.

Believing that the Trial Court correctly construed the will of John Quincy Gaines and entered a proper judgment based on such construction, we affirm its judgment.

Affirmed.